UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MIDORI HOSOKAWA,

     Plaintiff,        14cv6189

   -against-         OPINION & ORDER

SCREEN ACTORS GUILD-AMERICAN,
FEDERATION OF TELEVISION AND
RADIO, ARTISTS, *et ano.*,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, District Judge:

    Plaintiff <u>pro se</u> Midori Hosokawa brings this action against defendants Screen Actors Guild-American Federation of Television and Radio Artists and its New York Local (collectively, "SAG-AFTRA" or the "Union"), alleging breaches of SAF-AFTRA's duty of fair representation and a breach of its constitution. SAG-AFTRA moves to dismiss the First Amended Complaint ("Compl."). SAG-AFTRA's motion to dismiss is granted.

## BACKGROUND

    The material facts, gleaned from the First Amended Complaint and Hosokawa's supplemental submissions, are accepted as true for purposes of this motion.

    Hosokawa is an actor and member in good standing of SAG-AFTRA, a labor organization that represents actors and other media professionals. (Compl. ¶¶ 6, 10, 15.) In July 2013, she appeared in a Verizon "Droid" television commercial. (Compl. ¶ 19.) Two versions of the commercial aired: a thirty-second version ("First Commercial") and a four-minute version ("Second Commercial"). (Compl. ¶¶ 42, 48, 54.) The signatory producer of the Droid

commercial paid her as a "background" performer. (Compl. ¶ 43.) However, Hosokawa believes that SAG-AFTRA's collective bargaining agreement entitled her to be compensated as a "principal" performer. A principal performer receives enhanced compensation. (See Compl. ¶¶ 21–22.)

Despite the fact that a production assistant told Hosokawa that she was "virtually certain to be deemed a 'principal,'" the signatory producer determined that she was merely a "background" performer and paid her commensurately. (Compl. ¶¶ 42–43.) On August 9, 2013, Hosokawa submitted a inquiry form with SAG-AFTRA, seeking to have the Union file a claim with the signatory producer to "upgrade" her role to a "principal" performer on the 30-second version of the Droid commercial. (Compl. ¶ 44.) Approximately three weeks later, SAG-AFTRA denied her request and closed the case. (Compl. ¶ 51.) Thereafter, Hosokawa contacted SAG-AFTRA repeatedly seeking further clarification and attempting to persuade them to pursue an upgrade on her behalf. (See Compl. ¶¶ 52–53.)

In September 2013, Hosokawa learned of the Second Commercial. (Compl. ¶ 54.) She emailed SAG-AFTRA with information about the Second Commercial and a link to YouTube where it could be viewed. (Compl. ¶¶ 54, 55(A); Hosokawa Mem., ECF No. 71, Ex. 4.) A SAG-AFTRA representative responded, stating:

> You have been advised, on several occasions both in writing and verbally, that this claim is closed and that no further discussion is warranted.
>
> This claim remains closed as you do not meet the criteria for upgrade. Your constant barrage of emails and phone calls are disruptive. If you do not cease from contacting [a different representative] and the rest of the staff in the Commercials Department, I will have no choice but to refer this issue to Legal[, which] . . . means that your conduct as a member of this union will be reviewed and a determination made about your future contact with this organization.

(Hosokawa Mem., ECF No. 71, Ex. 4.)

Undeterred, in late September 2013, Hosokawa contacted a representative of the commercial's signatory producer who agreed with her that the two Verizon Droid commercials were separate and that the Union should assist her. (Compl. ¶ 56.) In October 2013, SAG-AFTRA reiterated to Hosokawa by letter that her claim was closed. (Compl. ¶ 57; Hosokawa Mem., ECF No. 71, Ex. 9.) SAG-AFTRA's letter stated:

> It is my understanding that you have been informed both verbally and in writing that you do not have a valid or meritorious claim for the above-referenced Verizon Wireless advertisement. This decision was made by the Commercials Department after carefully researching the matter. Subsequent to being informed of this decision, you have continued to relentlessly and repeatedly call and email the Commercials Department staff.
>
> . . .
>
> Your repeated calls and emails require staff to spend a disproportionate amount of time engaged in unproductive conversations with one member, and our resources are therefore denied to other members. In addition, your manner and attitude at times are extremely discourteous and rude, and there is never a place for that type of behavior between members and staff.
>
> If you have new matters to bring to our attention, we look forward to working with you to resolve them. However, we will no longer respond to any inquiries related to the above-referenced matter.

(Hosokawa Mem., ECF No. 71, Ex. 9.)

Notwithstanding SAG-AFTRA's October letter, Hosokawa filed two additional upgrade claims in February 2014. (Compl. ¶ 61.) One of the claims related to the Second Commercial, while the other pertained to a third version of the commercial that aired during the Super Bowl. (Compl. ¶ 61; Hosokawa Mem., ECF No. 85, at 3; Letter from Hosokawa dated October 20, 2016, ECF No. 91, at 1.) In her cover-email, Hosokawa explained that she was "filing another claim re Verizon Wireless Droid

-3-

Commercial. . . . On Sep.23rd 2013, I showed you the long version incorporated in the 'Drop', the entirety of about 4min. Droid TV Commercial . . . but you never handled my valid claim, then." (Declaration of Edward Hudson-Plush ("Hudson0Plush Decl.") dated June 23, 2016, ECF No. 55, Ex. C, at 1.)

Aside from filing two additional "upgrade" claims, Hosokawa filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). (Compl. ¶ 62; Hudson-Plush Decl., Ex. D.) The NLRB charge related to SAG-AFTRA's failure to pursue Hosokawa's "upgrade" claims. (Hudson-Plush Decl., Ex. D.) Then, in April 2014, Hosokawa filed two additional claims with the NLRB relating to her February "upgrade" claims. (Hudson-Plush Decl., Ex. E.) In June 2014, NLRB's Regional Director dismissed all of the charges, reasoning that the "Union's decision against proceeding to arbitration over [her] claims was based solely upon its good-faith evaluation of the merits of the grievance." (Hudson-Plush Decl., Ex. F.) Hosokawa appealed the Regional Director's decision to the NLRB's General Counsel.

In August 2014, Hosokawa filed this action. Her appeal of the Regional Director's decision was denied by the NLRB's General Counsel in September 2014. (Hudson-Plush Decl., Ex. G.)

LEGAL STANDARD

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in a plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Where a plaintiff is proceeding pro se, courts construe "the complaint to raise the strongest claims that it suggests." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016) (citation omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In considering a motion to dismiss, courts "may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (quoting In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013)).

## DISCUSSION

### I. Statute of Limitations for Duty of Fair Representation Claims

Claims for the breach of the duty of fair representation against a union are subject to a six-month statute of limitations. Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc., 742 F.3d 42, 46 (2d Cir. 2014). "In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." Kalyanaram, 742 F.3d at 46 (quoting Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 67 (2d Cir. 1995)).

Here, SAG-AFTRA repeatedly advised Hosokawa that it would not pursue her "upgrade" claims relating to the Verizon Droid commercials. The Union rejected her claim for the First Commercial in August 2013. (Compl. ¶ 51; see also Hudson-Plush Decl., Ex. C, at 9 ("As stated to you earlier, you are not upgradable. . . . The claim will not be pursued, nor will it

-5-

be discussed further.").)  And when she offered information about the Second Commercial, SAG-AFTRA rejected it and told her to cease contacting SAG-AFTRA representatives. (Hosakowa Mem., ECF No. 71, Ex. 4 ("[The] claim is closed and that no further discussion is warranted. . . . you do not meet the criteria for an upgrade. . . . If you do not cease from contacting . . . the staff in the Commercials Department, [the Union representative] will have no choice but to refer th[e] issue to Legal.").)

SAG-AFTRA's emails to Hosokawa were clear and categorical.  Any reasonable person would have recognized that the Union was declining to pursue the "upgrade" claims. Indeed, Hosokawa acknowledges as much in her opposition to this motion when she asserts, "the union prohibited Plaintiff to file a 2nd grievance upgrade claim for the 2nd commercial in mid September 2013 . . . [when] the union wrongfully, prematurely, permanently, closed the claim." (Hosokawa Mem., ECF No. 71, at 7.)

In October 2013, SAG-AFTRA dispelled any conceivable doubts with its formal letter from the Union's in-house counsel, explaining that it would not pursue Hosokawa's claims. (Compl. ¶ 57; Hosokawa Mem., ECF No. 71, Ex. 9.)  Specifically, the Union stated that Hosokawa "ha[d] been informed both verbally and in writing that [she] do[es] not have a valid or meritorious claim," a "decision made . . . after carefully researching the matter."  (Hosokawa Mem., ECF No. 71, Ex. 9.)  Accordingly, by October 2013—at the latest—Hosokawa reasonably should have known that SAG-AFTRA would not pursue her claims.  Therefore, those duty of fair representation claims are time-barred.

Hosokawa raises three arguments challenging this conclusion.  First, she asserts that the statute of limitations was tolled because she filed an unfair labor practice charge with the

NLRB.  But "it is well settled that NLRB proceedings do not toll the six-month statute of limitations applicable to" breaches of the duty of fair representation.  Ode v. Terence Cardinal Cooke (HCC), No. 08-CV-1528 (SHS), 2008 WL 5262421, at *3 (S.D.N.Y. Dec. 12, 2008); Kalyanaram, 742 F.3d at 49 ("'[P]arallel' avenue of relief to [plaintiff's duty of fair representation] claim . . . did not toll the applicable limitations period.").

        Hosokawa also maintains that the statute of limitations did not begin to run on her breach of duty of fair representation claims pertaining to the Second Commercial until she filed a claim form in February 2014.  This argument misses the mark.  Hosokawa's claim accrued when she reasonably should have known that SAG-AFTRA was not pursuing her claim.  See Kalyanaram, 742 F.3d at 46; Demchik v. Gen. Motors Corp., 821 F.2d 102, 105 (2d Cir. 1987) ("When the cause of action is based on a breach of the union's duty of fair representation, the claims against both the employer and the union begin to accrue no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred." (internal quotation marks omitted)).  After Hosokawa sent the Second Commercial to SAG-AFTRA and the Union responded by informing her, among other things, that she "d[id] not meet the criteria for [an] upgrade," and that her "claim is closed" and "will not be reopened," she should have understood that a breach occurred.  (Hosakowa Mem., ECF No. 71, Ex. 4.)

        Finally, Hosokawa contends that the doctrine of equitable tolling is applicable.[1]  Courts only apply equitable tolling "in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll.'"  Walker v.

Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (quoting Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)).  This argument is also unavailing.

In October 2013, SAG-AFTRA's in-house counsel informed Hosokawa that the Union would not pursue her claim.  Instead of filing a federal law suit, she waited until February 2014 to file a formal claim regarding the Second Commercial.  To the extent she attributes her delay to a belief that SAG-AFTRA might eventually pursue her claim, such an excuse is insufficient.  See Cohen v. Flushing Hosp. & Med. Ctr., 68 F.3d 64, 68 (2d Cir. 1995) (rejecting equitable tolling where plaintiff "entertained hopes of future representation by the Union").

Further, Hosokawa does not allege extraordinary circumstances.  That standard is "'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.'"  Wilder v. United States Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016) (quoting Hall v. Potter, No. 06–CV–5003 (JFB), 2009 WL 577753, at *6–7 (E.D.N.Y. Mar. 4, 2009)).  To meet the extraordinary circumstances test, a plaintiff "must prove that the cause of his delay was both beyond his control and unavoidable even with diligence."  Pillco v. Bradt, No. 10-CV-2393 (SAS), 2010 WL 3398467, at *2 (S.D.N.Y. Aug. 26, 2010) (internal quotation marks omitted).  Extraordinary circumstances exist only in limited circumstances, such as "where plaintiff 'attest[ed] that he did not receive' notice of right to sue until deadline had passed 'because the EEOC sent it to an incorrect address, . . . and he timely commenced court action 'within ninety days' after receiving the notice."  Wilder, 175 F. Supp. 3d at 90 (quoting Smith v. Chase Manhattan Bank, No. 97-CV-4507 (LMM), 1998 WL 642930,

---

[1] Hosokawa also asserts equitable estoppel, but that doctrine is not applicable as she does not claim that SAG-AFTRA made any "misrepresentation of a material fact that lulled [her] into believing that it was not necessary . . . to commence litigation."  Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985).

at *4 (S.D.N.Y. Sept. 18, 1998)).  Here, the Complaint does not allege any facts sufficient to meet this threshold.

## II. Breach of Constitution

Construing the Complaint in the most favorable light to Hosokawa, her claim for breach of the Union constitution raises two distinct issues: SAG-AFTRA breached its constitution (1) by ignoring Hosokawa's upgrade claims, and (2) threatening to review her membership.  (See Compl. ¶¶ 55(A), 79, 84.)  Neither allegation suffices.

First, a breach of a union constitution claim that involves the "settlement of disputes" under a collective bargaining agreement and are factually analogous to duty of fair representation claims are subject to the same six-month limitations period.  See Legutko v. Local 816, IBT, 853 F.2d 1046, 1047 (2d Cir. 1988) (holding that six-month duty of fair representation statute of limitations applicable to claim alleging breach of union contract); Sanders v. Kiley, No. 91-CV-6320 (KMW), 1995 WL 77916, at *9 (S.D.N.Y. Feb. 23, 1995) (applying six-month statute of limitations to breach of constitution claim for union's failure to provide adequate representation); Connor v. Elmhurst Dairy, Inc., No. 13-CV-4769 (ENV), 2015 WL 5159185, at *5 (E.D.N.Y. Aug. 17, 2015) ("The statute of limitations for a hybrid claim, under the LMRA, is six months.").  This is because "permit[ting a]  plaintiff . . . to litigate what is essentially a 'repackaged' [duty of fair representation] claim" after the six-month statute of limitations "would interfere dramatically with the expedient resolution of grievances—one of the central goals of federal labor law.  It would also enable plaintiff to subvert the Supreme Court's holding in [DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983)] by allowing [her] to avoid the . . . limitations period simply by casting [her] complaint regarding the quality of [her] union's representation in terms of breach of a union constitution, rather than breach of the [duty of fair

representation]." Sanders, 1995 WL 77916, at *8. Thus, to the extent Hosokawa's breach of constitution claim is premised on SAG-AFTRA's failure to pursue her upgrade claims, they are barred by the six-month statute of limitations.

Second, under New York law, "[a] union's constitution and by-laws constitute a contract between the union and its members." Ballas v. McKiernan, 41 A.D.2d 131, 133 (2d Dep't 1973), aff'd, 35 N.Y.2d 14 (N.Y. 1974); Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO, No. 94-CV-1254 (JSM), 1996 WL 3940, at *5 (S.D.N.Y. Jan. 3, 1996), aff'd, 104 F.3d 351 (2d Cir. 1996). "To sustain a claim for breach of contract, New York law requires the following three elements: (1) the existence of a contract; (2) breach; and (3) damages resulting from, or caused by, that breach." In re M/V MSC FLAMINIA, No. 12-CV-8892 (KBF), 2017 WL 239384, at *4 (S.D.N.Y. Jan. 18, 2017) (citing Nat'l Market Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 525 (2d Cir. 2004)).

Here, Hosokawa fails to allege that any breach occurred. She does not claim that SAG-AFTRA took any action against her. Rather, she alleges only that the Union "threat[ened] to expel her." (Compl. ¶ 79.) Not only is this allegation a misinterpretation of the Union representative's statement, it concedes that there was no breach, only a threat. See U. S. Plywood Corp. v. Hudson Lumber Co., 17 F.R.D. 258, 263 (S.D.N.Y. 1955) (distinguishing between threat to breach a contract in the future and a prior breach).

At best, these allegations are a claim for anticipatory breach. "'Anticipatory repudiation occurs when, before the time to performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty.'" Porwick v. Fortis Benefits Ins. Co., No. 99-CV-10122 (GBD), 2004 WL 2793186, at *5 (S.D.N.Y. Dec. 6, 2004) (quoting Lucente v. Int'l

Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citations omitted)). "The contracting party must communicate a final and unequivocal intention not to perform a future contractual obligation." Porwick, 2004 WL 2793186, at *5 (citing Rachmani Corp. v. 9 E. 96th St. Apartment Corp., 211 A.D.2d 262, 266 (1st Dep't 1995)).

However, the statements made by the Union representative were neither a final nor unequivocal statement that Hosokawa's membership would be revoked. The SAG-AFTRA representative only stated that if Hosokawa continued contacting the Union about her claim, she would be referred to SAG-AFTRA's legal department where her conduct would be reviewed. (Hosakowa Mem., ECF No. 71, Ex. 4.) In sum, the comments that Hosokawa must conform her conduct to Union policy in order to continue to be a Union member, amounted to little more than a caution and did not constitute an anticipatory breach of contract.

## CONCLUSION

SAG-AFTRA's motion to dismiss is granted. The Clerk of Court is directed to mail a copy of this Order to Plaintiff pro se, terminate all pending motions, and mark this case as closed.

DATED: February 7, 2017
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.